FILED

2015 Mar-02  AM 10:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **LATICHA SCOTT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:14-CV-2162-VEH** |
| | ) |
| **TRANSPORT AMERICA, INC,** | ) |
| **SOUTHERN CAL TRANSPORT,** | ) |
| **LLC** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION AND ORDER

This employment discrimination case was filed on November 7, 2014, by the plaintiff, Laticha Scott, against defendants Transport America, Inc. ("Transport America") and Southern Cal Transport, LLC ("Southern Cal"). (Doc. 1). Count One of the complaint alleges sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e, *et seq.* ("Title VII"). Count Two alleges race discrimination in violation of Title VII and 42 U.S.C. § 1981. The complaint also sets out counts under the Alabama state law theories of outrage (Count Three), invasion of privacy (Count Four), negligent/wanton retention (Count Five), and negligent/wanton supervision and training (Count Six). All counts are alleged against all defendants.

The case comes before the court on Southern Cal's motion, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the state law claims as barred by the applicable statute of limitations. (Doc. 8). For the reasons stated herein, the motion will be **GRANTED**.

## I.   STANDARD

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6) ("[A] party may assert the following defenses by motion: (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting Fed. R. Civ. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also* Fed. R. Civ. P. 8(a) (setting forth general pleading requirements for a complaint including providing "a short and plain statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S.

2

Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid*." *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at

3

556, 127 S. Ct. at 1965).

## II.    ANALYSIS

The parties agree that a two year statute of limitations applies to the plaintiff's state law claims. (Doc. 8 at 3-4 (citing Ala. Code § 6-2-38(l) and 6-2-38(n) and applicable case law); doc.13 at 1 ("Plaintiff concedes that the applicable statute of limitations for each of her four state law claims . . . is two years.")). The defendant argues, and the plaintiff does not dispute, that, because each of the state law causes of action accrued no later than March 2012, and the complaint was not filed until November 7, 2014, the state law claims have been filed outside the two year period. (Doc. 8 at 5-9).

Still, the plaintiff contends that the filing of her EEOC charge (a prerequisite to maintaining her Title VII claim <u>only</u>) tolled the running of the statutes of limitations applicable to the state law claims. Her argument is two-fold. First she contends that principles of judicial economy mandate tolling. Second, she insists that, because the state law claims are not "separate, distinct, and independent" from the Title VII claims, the running of the statutes was tolled until the plaintiff received her right to sue letter from the EEOC. The court will address each argument in turn, beginning with the second.

4

## A.   "Separate," "Distinct," and "Independent"

The plaintiff argues that unless the state law claims are "separate," "distinct," and "independent" from the Title VII claims, the statute of limitations on those claims is tolled during the period of time that the plaintiff pursued her Title VII administrative remedies with the EEOC. In support of this argument she cites only *Kelley v. Wal-Mart Stores East, LP*, 2013 U.S. Dist. LEXIS 22027 (S.D. Ala. Feb. 13, 2013) (Granade, J.).

The plaintiff, somewhat awkwardly, argues that the *Kelley* court "denied that the statute of limitations should be tolled because the federal claims and state law claims must be demonstrated under different theories and facts." (Doc. 12 at 3). The defendant more clearly states in response that "*Kelley* held that the statute of limitations for state law claims '[is] not tolled while the plaintiff is pursuing administrative remedies, at least so long as the state law claims are separate and distinct from the federal discrimination claims.'" (Doc. 13 at 5-6). However, a careful examination of Judge Granade's opinion in *Kelley* shows that, although the court did examine whether the state law claims before it were separate and distinct from the Title VII claims, the court did not hold that such an examination was required. Further, an examination of the Supreme Court's opinion in *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 95 S. Ct. 1716, 44 L. Ed. 2d 295 (1975), where the

"separate and distinct" language first appears in this context, reveals that such an examination is not necessary.

### 1.    *Kelley v. Wal-Mart Stores East, LP.*

In *Kelley*,

> [the] [p]laintiff assert[ed] claims under Title VII alleging that she suffered sexual harassment, retaliation, and a hostile work environment during her employment. Plaintiff also assert[ed] state law claims of negligent and wanton hiring, training, supervision, and retention (Count III) and invasion of privacy (Count IV).

*Kelley*, 2013 WL 608030, at *1. The defendant moved for summary judgment on the state law claims, claiming they were untimely filed. Like the plaintiff in the instant case, the plaintiff in *Kelley* did not dispute that more than two years (the applicable statute of limitations) had elapsed since her state law claims had accrued. However, she argued that "the statute of limitations for state law claims are tolled while a Title VII claim is pending before the EEOC." *Id.* at 3.

The court in *Kelley* first noted that at least one case had held that "[i]t is well-established that the statute of limitations for a plaintiff's state law claims is not tolled while the plaintiff is pursuing administrative remedies with the EEOC." *Kelley*, 2013 WL 608030, at *3 (*citing Simmons v. Mobile Infirmary Medical Center*, 391 F.Supp.2d 1124, 1131 (S.D.Ala.2005). The court then noted that

> [o]ther Courts have agreed that the statute of limitations for a state law

claim are not tolled while the plaintiff is pursuing administrative remedies, <u>at least so long as the state law claims are separate and distinct from the federal discrimination claims</u>. *See e.g. Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 268–269 (5th Cir.2001) (finding that a Louisiana Statute which suspends or tolls the statute of limitations for state discrimination claims for up to six months during the pendency of an EEOC proceeding did not apply retroactively and that the EEOC administrative proceeding did not toll the statute of limitations for any of plaintiff's state law claims, which included intentional interference with contract, battery, intentional infliction of emotional distress, discrimination and retaliation); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322–323 (7th Cir.1992) (finding that the time for filing plaintiff's state law invasion of privacy claim was not tolled by the filing of a discrimination charge with the EEOC because it is separate and independent from plaintiff's Title VII claim); *Arnold v. U.S.*, 816 F.2d 1306, 1312–1313 (9th Cir.1987) (finding that there was no federal policy mandating equitable tolling, stating that plaintiff's state law claims were distinct from plaintiff's Title VII claim and that "Congress did not intend for these proceedings to delay independent avenues of redress."(citing Johnson supra )). While the filing of the EEOC charge places the defendant employer on notice of a claim of discrimination, unless "there is complete identity of the causes of action," the employer will not have sufficient "opportunity to protect itself against the loss of evidence, the disappearance and fading memories of witnesses, and the unfair surprise that could result from a sudden revival of a claim that long has been allowed to slumber."*Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 466 n. 14, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (citations omitted).[1]

*Id.* (emphasis added). Only then did the court extensively analyze whether the state

law claims were separate and independent. It held that

---

[1] This court notes that, of the three Circuit Court of Appeals cases cited, only *Juarez* can truly be said to have examined this issue in the same context, and then, only in a very cursory manner. Further, as will be discussed in more detail below, the Supreme Court's opinion in *Johnson* was focused only on the differences in Title VII and Section 1981 (because of the need to distinguish those statutes in that case).

plaintiff's state law claim for invasion of privacy is separate and independent from her claims of sexual discrimination. The invasion of privacy claim <u>involves different facts and legal analysis than her Title VII claims</u>. <u>The claim for invasion of privacy does not vindicate plaintiff's right to be free from discriminatory treatment, but rather her right to be free from wrongful intrusion into her private activities</u>.

*Id.* at 4 (emphasis added).

The *Kelley* court then noted that the "[p]laintiff's claims for negligent and wanton hiring, training, supervision, and retention are more closely related to her discrimination claims." *Id.* at 4. That was because, under Alabama law, for an employer to be guilty of negligent and wanton hiring, training, supervision, and retention, the plaintiff must have been a victim of an underlying tort committed by a co-employee. *Id.* The close relationship existed in the *Kelley* case because the underlying tort was the Title VII sexual harassment claim. *Id.* The court then compared the elements of a Title VII case with those of a negligent and wanton hiring, training, supervision, and retention case. The court determined that, because a negligent and wanton hiring, training, supervision, and retention claim "requires a showing of notice and failure to respond," *id.* at 5, elements not present in a Title VII claim, "a claim for negligent and wanton hiring, training, supervision, and retention may require proof of different theories and facts." *Id.* The court used the word "may" because, it noted, sometimes, when the harasser is <u>not</u> the plaintiff's supervisor, a

plaintiff can demonstrate vicarious liability on the part of the employer by showing that the employer had knowledge of the harassment and failed to take prompt remedial action–a situation which would make the elements of the two claims identical. *Id.* However, in *Kelley*, the harassing employee <u>was</u> the plaintiff's supervisor, so no such additional proof would be necessary for vicarious liability, and, therefore, the elements (and therefore the facts and theories) of the two claims would be different. *Id*. at 6. Then, the *Kelley* court concluded that

> even <u>if</u> the statute of limitations should be tolled during the pendency of an EEOC proceeding when the state law claims are based on the same facts and theories, the state law claims in this case would not be tolled because they are separate and distinct. Accordingly, the court finds that the statute of limitations was not tolled during plaintiff's EEOC proceeding and that plaintiff's state law claims are time-barred.

*Id.* at *6 (emphasis added).

This court does not find *Kelley* persuasive for two independent and alternative reasons. First, and foremost, the court did not <u>hold</u> that a finding of "separate," "distinct," and/or "independent" was necessary. It merely held that, <u>if such a finding was necessary</u>, the claims in *Kelley* would qualify.

Second, the method used by the *Kelley* court for determining which claims are "separate," "distinct," and "independent" from Title VII claims seems to this court to be inconsistent with existing precedent. The *Kelley* opinion decided that claims are

"separate," "distinct," and "independent" when they involve "different facts and legal analysis." *Kelley*, 2013 WL 608030 at 4. The court then seems to say that claims involve "different facts and legal analysis" when: 1) they each seek to vindicate different types of rights; or 2) they have different elements.[2] The court notes that "Title VII and [Section] 1981 have the same requirements of proof and utilize the same analytical framework," *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 (11th Cir. 2011), and each type of claim seeks to vindicate the right to be free from race discrimination in the workplace. Under the logic of *Kelley*, the two claims would not be "separate, distinct, and independent," yet the Supreme Court has already held that they are. *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 465-66, 95 S. Ct. 1716, 1723, 44 L. Ed. 2d 295 (1975). For that reason, it seems to this court that determining "separate and distinct" with reference to each claim's elements or rights to be vindicated is not appropriate.[3]

---

[2] Although the court does not explain how it arrived at these methods, it is clear that the first method is borrowed from *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317 (7th Cir. 1992), where the Seventh Circuit, determined that the statute of limitations for a state law claim of invasion of privacy were not tolled during the period of EEOC review of the Title VII claims because "[t]he state-law claim does not vindicate Juarez's right to be free from discriminatory treatment based on her sex, but rather her right to be free from "offensive or objectionable" intrusion into her seclusion." *Juarez*, 957 F.2d at 322-23. Of course, *Juarez* too does not explain how it arrives at this method. Nor does the court expend a tremendous amount of judicial energy exploring the issue. The above quote is the extent of the Seventh Circuit's analysis.

[3] Two of the state law claims are negligent/wanton retention (Count Five), and negligent/wanton supervision and training (Count Six).  It has been noted that "[a]n employer

In any case, *Kelley* is not binding on this court. However, *Johnson*, the case

from whence the separate, distinct, and independent language originally sprang, is.

Therefore, the court now turns to an examination of the *Johnson* opinion.

---

cannot be independently guilty of negligent training or supervision "'in the absence of some tort committed by [an employee] against [the plaintiff].'" *Blackwood v. Arc of Madison Cnty., Inc.*, No. CV-12-S-1000-NE, 2012 WL 5932451, at *6 (N.D. Ala. Nov. 26, 2012) (*quoting Taylor v. Stevenson*, 820 So.2d 810, 812 (Ala.2001) (*in turn citing Stevenson v. Precision Standard, Inc.*, 762 So.2d 820 (Ala.1999)). It has also been held that the employee's tort must be "recognized under Alabama common law." *Jackson v. Cintas Corp.*, 391 F.Supp.2d 1075, 1100 (M.D.Ala.2005) (*citing Stevenson*, 762 So.2d at 824)). Counts Five and Six both relate, at least in part, to the sexual harassment of the plaintiff.

> As a general rule, under Alabama law, an independent cause of action for sexual harassment does not exist and, thus, the alleged sexual harassment alone cannot be the underlying tort necessary for plaintiff's negligent hiring, training, supervision and retention claim. *Stevenson v. Precision Standard, Inc.*, 762 So.2d 820, 824–25 (Ala.1999). However, the Alabama Supreme Court has recognized a sexual harassment exception to the requirement that a common law tort must underlie a negligent hiring, training, supervision, and retention claim. The exception provides that "the manner in which a sexual-harassment complaint is handled when sexual harassment has, in fact, occurred can form the basis for a claim for negligent or wanton supervision" when the handling of the complaint did not cause the harassment to cease or caused it to only temporarily cease. *Stevenson v. Precision Standard, Inc.*, 762 So.2d 820, 825 (Ala.1999); *see also Patterson v. Augat Wiring Sys., Inc.*, 944 F.Supp. 1509 (M.D.Ala.1996); *Machen v. Childersburg Bancorporation, Inc.*, 81 FEP Cases 815 (Ala.1999); *Mardis v. Robbins Tire & Rubber Co.*, 669 So.2d 885 (Ala.1995); *Big B, Inc. v. Cottingham*, 634 So.2d 999, 1003–04 (Ala.1993).

*Folsom v. McAbee Const., Inc.*, No. 7:09-CV-01486-HGD, 2012 WL 3527876, at *15 (N.D. Ala. June 6, 2012) report and recommendation adopted, No. 7:09-CV-01486-KOB, 2012 WL 3508587 (N.D. Ala. Aug. 14, 2012). Whether Counts Five and Six fall into the exception above was not raised by the parties. Accordingly, the court makes no judgment as to whether, in the alternative, these counts are also due to be dismissed as not based upon a common law Alabama tort.

2.    *Johnson v. Ry. Exp. Agency, Inc.*

In *Johnson*, the plaintiff timely filed his Title VII claims, but missed the deadline for filing a Section 1981 claim. He argued on appeal that the statute of limitations applicable to that claim "was suspended during the pendency of his timely filed administrative complaint with the EEOC under Title VII." *Johnson*, 421 U.S. at 457. The "separate," distinct," and "independent" language appears in the first part of the Court's opinion where it discusses the similarities and differences between a Title VII action and an action under Section 1981.

After first discussing the nature, remedies, and administrative prerequisites of a Title VII action, the court stated that

> [d]espite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief. ["](T)he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.["]

*Johnson*, 421 U.S. at 459 (*quoting Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48, 94 S. Ct. 1011, 1019, 39 L. Ed. 2d 147 (1974)). The Court then discussed characteristics and remedies of <u>one</u> of those "other remedies"--a Section 1981 action. Thereafter, the Court noted:

> Section 1981 is not coextensive in its coverage with Title VII. The latter

is made inapplicable to certain employers. 42 U.S.C. s 2000e(b) (1970 ed., Supp. III). Also Title VII offers assistance in investigation, conciliation, counsel, waiver of court costs, and attorneys' fees, items that are unavailable at least under the specific terms of § 1981.

*Johnson*, 421 U.S. at 460.

Thereafter, the Supreme Court analyzed whether the two claims were "independent." The Court held:

> Petitioner, and the United States as amicus curiae, concede, as they must, the independence of the avenues of relief respectively available under Title VII and the older § 1981. . . . Further, it has been noted that the filing of a Title VII charge and resort to Title VII's administrative machinery are not prerequisites for the institution of a § 1981 action. . . . We are satisfied, also, that Congress did not expect that a § 1981 court action usually would be resorted to only upon completion of Title VII procedures and the Commission's efforts to obtain voluntary compliance. Conciliation and persuasion through the administrative process, to be sure, often constitute a desirable approach to settlement of disputes based on sensitive and emotional charges of invidious employment discrimination. We recognize, too, that the filing of a lawsuit might tend to deter efforts at conciliation, that lack of success in the legal action could weaken the Commission's efforts to induce voluntary compliance, and that a suit is privately oriented and narrow, rather than broad, in application, as successful conciliation tends to be. But these are the natural effects of the choice Congress has made available to the claimant by its conferring upon him independent administrative and judicial remedies. The choice is a valuable one. Under some circumstances, the administrative route may be highly preferred over the litigatory; under others the reverse may be true. We are disinclined, in the face of congressional emphasis upon the existence and independence of the two remedies, to infer any positive preference for one over the other, without a more definite expression in the legislation Congress has enacted, as, for example, a proscription of a §1981 action while an EEOC claim is pending. We generally conclude,

therefore, that the remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are <u>separate, distinct, and independent</u>.

*Id.* at 460-61 (citations omitted) (emphasis added). The court then stated: "With this base established, we turn to the limitation issue." *Id.* at 461.

After establishing the independence of Title VII and Section 1981, the court then refused to toll the statute of limitations applicable to Section 1981. It first determined that there was no basis in state law (which provided the limitations period for plaintiff's Section 1981 claim) for doing so. *Id.* at 472. Next, it examined whether there was any federal policy which required tolling, writing:

> Petitioner argues that a failure to toll the limitation period in this case will conflict seriously with the broad remedial and humane purposes of Title VII. Specifically, he urges that Title VII embodies a strong federal policy in support of conciliation and voluntary compliance as a means of achieving the statutory mandate of equal employment opportunity. He suggests that failure to toll the statute on a § 1981 claim during the pendency of an administrative complaint in the EEOC would force a plaintiff into premature and expensive litigation that would destroy all chances for administrative conciliation and voluntary compliance.

> We have noted this possibility above and, indeed, it is conceivable, and perhaps almost to be expected, that failure to toll will have the effect of pressing a civil rights complainant who values his § 1981 claim into court before the EEOC has completed its administrative proceeding. One answer to this, although perhaps not a highly satisfactory one, is that the plaintiff in his § 1981 suit may ask the court to stay proceedings until the administrative efforts at conciliation and voluntary compliance have been completed. But the fundamental answer

to petitioner's argument lies in the fact—presumably a happy one for the civil rights claimant—that Congress clearly has retained § 1981 as a remedy against private employment discrimination separate from and independent of the more elaborate and time-consuming procedures of Title VII. Petitioner freely concedes that he could have filed his § 1981 action at any time after his cause of action accrued; in fact, we understand him to claim an unfettered right so to do. Thus, in a very real sense, petitioner has slept on his § 1981 rights. The fact that his slumber may have been induced by faith in the adequacy of his Title VII remedy is of little relevance inasmuch as the two remedies are truly independent. Moreover, since petitioner's Title VII court action now also appears to be time barred because of the peculiar procedural history of this case, petitioner, in effect, would have us extend the § 1981 cause of action well beyond the life of even his Title VII cause of action. We find no policy reason that excuses petitioner's failure to take the minimal steps necessary to preserve each claim independently.

*Id.* at 465-66. In a footnote, the Court also wrote:

> Petitioner argues that the timely filing of a charge with the EEOC has the effect of placing the charged employer on notice that a claim of discrimination is being asserted. Thus, petitioner argues, the employer has the opportunity to protect itself against the loss of evidence, the disappearance and fading memories of witnesses, and the unfair surprise that could result from a sudden revival of a claim that long has been allowed to slumber. . . . Even if we were to ignore the substantial span of time that could result from tacking the § 1981 limitation period to the frequently protracted period of EEOC consideration, we are not at all certain that a Title VII charge affords the charged [party] the protection that petitioner suggests. . . . <u>Only where there is complete identity of the causes of action will the protections suggested by petitioner necessarily exist and will the courts have an opportunity to assess the influence of the policy of repose inherent in a limitation period.</u>

*Id.* at 476, n. 14 (emphasis added).

This court does not read the *Johnson* opinion as a requirement that a reviewing

court extensively analyze and compare an action's Title VII claims with other claims in the case to determine whether any similarities (of elements, theories, facts, evidence, rights to be vindicated, or anything else) exist. *Johnson* was decided in 1975, only 11 years after the passage of Title VII. Additionally, until *Johnson*, the Supreme Court had not held that Section 1981 could be used to address race discrimination in employment. *See*, *Johnson*, 421 U.S. at 459-60 ("Although this Court has not specifically so held, it is well settled among the federal Courts of Appeals—and we now join them—that § 1981 affords a federal remedy against discrimination in private employment on the basis of race."). It therefore makes sense that the Supreme Court would clarify the effect Title VII, and its administrative prerequisites, had on a Section 1981 claim, by explaining exactly how the two were different. To this court, *Johnson's* discussion of separate, distinct, and independent, was merely meant to eliminate any confusion in that one isolated instance. There is no indication in the opinion that a similar analysis would be necessary in a case which dealt with state law claims which are clearly separate, even if they were based on the same conduct as the Title VII claims. In short, "separate" and "independent" simply means "not Title VII."

The Eleventh Circuit's opinion in *Lewis v. Asplundh Tree Expert Co.*, 305 F. App'x 623, 626 (11th Cir. 2008), while not directly on point, nevertheless seems to

confirm this view. In *Lewis*, an African-American male employee brought an action against his employer, the City of Gainesville, Florida, and a contractor, alleging employment discrimination in violation of Title VII, a violation of 42 U.S.C. § 1983, and assault and battery. Like the instant case, the plaintiff timely filed his Title VII action after he received his right to sue, but was well past the applicable statute of limitations on his Section 1983 and state law claims. The Eleventh Circuit conducted no in-depth analysis of the elements of his Title VII claim versus his Section 1983 and state law claims. It also did not examine the rights each claim purported to vindicate. Instead, the court wrote:

> [The plaintiff] argues that the statute of limitations should be tolled for the period of the EEOC investigation. The Supreme Court has held, however, that the pendency of an EEOC claim does not toll the statute of limitations for a private civil rights claim because the two claims are "truly independent." *Johnson v. Ry. Express Agency*, 421 U.S. 454, 466, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *see also Smith v. McClammy*, 740 F.2d 925, 927 (11th Cir.1984) ( "Since exhaustion of administrative remedies is not a prerequisite to filing [a § 1983] suit, the statute [of limitations] would not be tolled pending pursuit of administrative remedies but would begin to run on the date the cause of action accrued.").

> Here the injury that forms the basis of Lewis' § 1983 claim is the alleged noose incident, which occurred on April 1, 1996. He did not file this action until almost eight years later. As the district court pointed out, even if we assume that the facts supporting Lewis' § 1983 claim were not apparent until after he contacted the EEOC in August of 1996, the statute of limitations expired well before Lewis filed his complaint on May 25, 2004.

Lewis' state law assault and battery claim based on the noose incident is also subject to a four year statute of limitations. See Fla. Stat. 95.11(3)(o). The statute of limitations for that claim began to run on April 1, 1996, see Fla. Stat. 95.031(1), and therefore is also time-barred. The district court was correct to conclude that both the § 1983 and the state law tort claims were barred on statute of limitations grounds.

*Lewis*, 305 F. App'x at 626-627.[4]

The court also notes that each of the three circuits which has considered this issue has held that state law claims are not tolled, and none has engaged in the extensive analysis done by the court in *Kelley*. In *Castagna v. Luceno*, 744 F.3d 254, 256-58 (2d Cir. 2014), the Second Circuit held that the "filing an EEOC charge does not toll the time for filing state tort claims, including those that arise out of the same nucleus of facts alleged in the charge of discrimination filed with the EEOC." Although the Second Circuit cited *Johnson*, it did not discuss the "separate," "distinct," and "independent" concepts at all, much less engage in the same type of extensive analysis of the respective causes of action as the *Kelley* court did. In *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322-23 (7th Cir. 1992), the Seventh Circuit held that the time for filing a state law claim of invasion of privacy is not tolled by the filing of a discrimination charge with the EEOC. However, it based its decision on the fact that "the state-law claim of invasion of privacy in this

---

[4] Arguably, the tolling discussion applies only to the Section 1983 claims. Still, it is notable that the court felt no need to analyze the state law claims in depth either.

case is clearly separate from, and independent of, Title VII." *Juarez*, 957 F.2d at 322-23. Still, the only analysis it conducted was to say that "[t]he state-law claim does not vindicate [the plaintiff's] Juarez's right to be free from discriminatory treatment based on her sex, but rather her right to be free from "offensive or objectionable" intrusion into her seclusion." *Id.* Again, it did not compare the elements of each cause of action. Similarly, in *Arnold v. United States*, 816 F.2d 1306, 1313 (9th Cir. 1987), the Ninth Circuit found that "the wrong underlying [the plaintiff's] Title VII claim is distinct from that underlying her state-law tort claims." *Arnold*, 816 F.2d at 1312-13. However, that finding had nothing to do with the *Johnson* analysis, but rather was directed at whether California (the state from which the state law tort came) would permit equitable tolling. *See id.* (citing *Johnson* only after the discussion of the wrong being distinct).

This court holds that, because the state law claims in this case are not Title VII claims, they are "separate," "distinct," and "independent" of the Title VII claims. For that reason, the statutes of limitations applicable to those claims were not tolled by the Title VII administrative proceedings.

### B.   <u>Principles of Judicial Economy Do Not Require Tolling</u>

The plaintiff also states:

> Plaintiff could not have filed her federal Title VII claims until the

EEOC issued its right to sue. Courts have often found that the state statute of limitations should be tolled while the EEOC claim was pending. To hold otherwise could result in two separate litigation cases involving the same parties, same witnesses and same nucleus of facts. This would result in duplication and judicial inefficiency.

If the [p]laintiff were to file the state law claims within the statute of limitations argued by [d]efendant, she would have had to file a case in Alabama state court on or around March of 2014. During this time frame, the EEOC Charge would still be pending while litigation of the facts surrounding the invasion of privacy, outrage and negligence claims, specifically related to [d]efendant's knowledge and failure to act would be actively litigated. Then, once the EEOC Charge was filed, the [p]laintiff would have to file a case based on the same facts, with the same parties in Federal Court.[5] Under these circumstances, two separate cases involving the same parties, same facts and witnesses would be pending in two separate courts.

(Doc. 12 at 2).

This "judicial economy" issue has not been addressed by the Eleventh Circuit Court of Appeals. However, it was recently addressed, very persuasively, by the Second Circuit in *Castagna*, 744 F.3d 254. In *Castagna*, the Second Circuit wrote:

Castagna principally contends that, were the statute of limitations for state tort claims not tolled pending the EEOC's consideration of a charge of discrimination, to preserve her claims, a litigant would be forced first to bring a tort case in state court "and later bring a federal,

---

[5] The plaintiff is incorrect that she "must" file her Title VII claim in federal court. State courts have concurrent jurisdiction over Title VII cases with federal courts. *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 826, 110 S. Ct. 1566, 1570, 108 L. Ed. 2d 834 (1990). Accordingly, assuming a previously filed case in state court was still pending, the plaintiff could have sought leave to amend to add her Title VII claims once she received her right to sue letter.

discrimination related claim in federal court ... with an identical set of facts," thereby "thwart[ing] ... the judicial efficiency encouraged by the grant of supplemental jurisdiction ... in 28 U.S.C. § 1367" (quoting *Forbes v. Merrill Lynch, Fenner & Smith, Inc.,* 957 F.Supp. 450 (S.D.N.Y.1997)). Such a state of affairs, the argument continues, would also "substantially undermine" one of the central "purposes of Title VII, which affords the EEOC the opportunity to ... facilitate dispute resolution prior to the commencement of litigation" (quoting *Brown v. Bronx Cross Cnty. Med. Grp.,* 834 F.Supp. 105, 111 (S.D.N.Y.1993) (citing 42 U.S.C. § 2000e–5(b))). In short, Castagna's position is that judicial efficiency mandates tolling of the relevant statutes of limitations for state tort claims once a charge of discrimination is filed with the EEOC.

The Seventh and Ninth Circuits—the only two federal courts of appeals that appear to have considered the issue—have rejected similar arguments regarding tolling of state tort claims. *See Juarez v. Ameritech Mobile Commc'ns, Inc.,* 957 F.2d 317, 323 (7th Cir.1992); *Arnold v. United States,* 816 F.2d 1306, 1313 (9th Cir.1987).[6] So, too, have the "vast majority" of district court decisions in this circuit. *See Kolesnikow v. Hudson Valley Hosp. Ctr.,* 622 F.Supp.2d 98, 122 & n. 19 (S.D.N.Y.2009) (collecting cases).

The U.S. Supreme Court's decision in *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), supports the determinations of those courts. *Johnson* held that the filing of a charge of discrimination with the EEOC does not toll "the period of limitation applicable to an action based on the same facts, instituted under 42 U.S.C. § 1981." *See id.* at 455, 95 S.Ct. 1716. The Supreme Court acknowledged that without tolling, once a discrimination charge was lodged with the EEOC, a "civil rights complainant who values his § 1981 claim" would often be "press [ed] ... into court before the EEOC has completed its administrative proceeding." *Id.* at 465, 95 S.Ct. 1716. Nonetheless, the Court determined that there was no tolling

---

[6] The undersigned has found no Circuit opinions which post-date *Castagna* and address this same issue.

of the statute because Title VII and section 1981 were two separate statutes providing for different remedies. As Justice Blackmun wrote for the majority, "Congress clearly ... retained § 1981 as a remedy against private employment discrimination separate from and independent of the more elaborate and time-consuming procedures of Title VII." *See id.* at 466, 95 S.Ct. 1716. And "[t]he fact that [a claimant's] slumber may have been induced by faith in the adequacy of [the] Title VII remedy is of little relevance" to tolling "inasmuch as the two remedies are truly independent." *See id.*

Castagna attempts to distinguish *Johnson* on the ground that that action involved exclusively federal causes of action—specifically Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. She argues that, unlike *Johnson*, to preserve all of her claims she "would have had to bring a separate state court action first and then a federal court action" once her Title VII claim had ripened. Castagna's argument that her dilemma differs in kind from *Johnson's* is unavailing. First, as the Ninth Circuit has recognized, although EEOC proceedings "often are beneficial" in resolving workplace disputes, *Johnson* "held, nonetheless, that Congress did not intend for these proceedings to delay independent avenues of redress." *See Arnold,* 816 F.2d at 1313. Second, as in *Johnson,* a plaintiff who in the future finds herself in Castagna's situation "may ask [a] court to stay proceedings" in the initial action "until the [EEOC's] administrative efforts ... have been completed." *See Johnson,* 421 U.S. at 465, 95 S.Ct. 1716. Although such a stay procedure is "perhaps not a highly satisfactory" response to Castagna's plight, "the fundamental answer to [her] argument lies in the fact" that she always had "an unfettered right" to pursue her tort claims. *See id.* at 466, 95 S.Ct. 1716. Notably, Castagna does not urge that she could not have brought those claims within the applicable statute of limitations. She simply failed to do so.

Moreover, contrary to Castagna's impermissibly narrow reading of *Johnson,* the Court's reasoning against tolling encompassed more than the federal statute there at issue, 42 U.S.C. § 1981:

Despite Title VII's range and its design as a

22

> comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief. The legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and *other applicable state and federal statutes.*

*Id.* at 459, 95 S.Ct. 1716 (alteration and quotation marks omitted) (emphasis added). For that reason, following *Johnson,* the Seventh Circuit rejected an employee's argument that the "Illinois statute of limitations" applicable to an invasion of privacy claim "was tolled by [an employee's] timely filing of a discrimination charge with the [EEOC]." *See Juarez,* 957 F.2d at 322. The Ninth Circuit similarly concluded that "federal policy [did not] mandate equitable tolling" of the California statute of limitations applicable to "common law tort claims" arising from the same facts as an employee's Title VII claim during the time that an EEOC charge was pending. *See Arnold,* 816 F.2d at 1308, 1313.

> In short, there is no basis for concluding that Congress intended that a civil rights claimant should be entitled to delay filing any state tort claims during the EEOC's consideration of a charge of discrimination. We therefore join the Seventh and Ninth Circuits in holding as a matter of federal law that filing an EEOC charge does not toll the time for filing state tort claims, including those that arise out of the same nucleus of facts alleged in the charge of discrimination filed with the EEOC.

*Id.* at 256-58 (underlining added) (original footnotes omitted).[7] The court is

---

[7] The plaintiff also writes:

A collection of cases have held that based on interests of fairness and judicial economy, courts should equitably toll the state statute of limitations when an EEOC Charge is pending. *See EEOC v. Avecia Inc.*, 2003 U.S. Dist. LEXIS 19325, 2003 WL 22432911, *3 (D.Del. Oct. 23, 2003); *Forbes v. Merrill Lynch, Fenner & Smith, Inc.*, 957 F.Supp.450, 455-56 (S.D.N.Y. 1996)(noting a split of authority in that

persuaded by the Second Circuit's opinion, and the cases cited therein, that the plaintiff's judicial economy argument is without merit.

## III.   CONCLUSION

For the reasons stated herein, the court finds that the plaintiff's state law claims were untimely filed. Accordingly, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the plaintiff's claims for outrage (Count Three), invasion of privacy (Count Four), negligent/wanton retention (Count Five), and negligent/wanton supervision and training (Count Six), are **DISMISSED with prejudice** as to all defendants.[8]

---

district, but finding tolling more persuasive); *Gray v. Shearson Lehman Bros.*, 947 F.Supp. 132, 136 (S.D. N.Y. 1996)(holding that ins some circumstances when the Title VII claims and state law claims are so related the statute of limitations should be tolled while the EEOC action is pending); *Brown v. Bronx Cross County Medical Group*, 834 F.Supp. 105, 111 (S.D. N.Y. 1993).

(Doc. 12 at 3). The court is not persuaded by the 1993 and 1996 opinions from the Southern District of New York, as, to the extent that they are inconsistent with *Castagna*, a 2014 Second Circuit opinion, they have been overruled, if not expressly, then impliedly. The court is not persuaded by the plaintiff's citation to the Delaware district court opinion, as that opinion failed to cite or discuss any of the authority set out in *Castagna*, included the Supreme Court's opinion in *Johnson*.

[8] Very recently, Transport Corporation of America, Inc. filed its own motion to dismiss the state law claims based on the same grounds as the instant motion. (Doc. 16). Since these issues have been fully briefed, the court sees no reason to wait for briefing on the second motion before dismissing the state law claims in their entirety, and as to all defendants. Document 16 is also **GRANTED**.

**DONE** and **ORDERED** this 2nd day of March, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge